UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| STEPHEN J. HOLSCHEN, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:07CV01455 JCH |
| | ) | |
| INTERNATIONAL UNION OF PAINTERS | ) | |
| & ALLIED TRADES/ PAINTERS | ) | |
| DISTRICT COUNCIL #2, | ) | |
| | ) | |
| Defendant(s). | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Motion for Summary Judgment of Defendant International Union of Painters & Allied Trades/Painters District Council #2 ("Union" or "Defendant"), filed August 11, 2008. (Doc. No. 28). The matter is fully briefed and ready for disposition.

## **BACKGROUND**

By way of background, Plaintiff Stephen J. Holschen ("Plaintiff" or "Holschen") is a former member of the Union. In June 2003, Plaintiff publicly supported Rich Bryan in his race against Kevin Kenny for the position of business manager of the Union. (First Amended Complaint ("Complaint"), ¶2 (Doc. No. 9)). Immediately after Kenny was elected, Plaintiff was discharged from his position as organizer for the Union. (Id.) In January 2006, Plaintiff attempted to organize the painters employed by the City of St. Louis. (Complaint, ¶4). On February 8, 2006, Plaintiff received a letter from Gene Kappler and Kevin Kenny of the Painters District Council #2, directing Plaintiff to cease and desist "organizing efforts to District Council #2 Delegates and/or members." (Defendant's Statement of Uncontroverted Material Facts ("DSUMF"), Exhibit B, p. 2 (Doc. No. 29-1)). Upon

receipt of the February 8, 2006 correspondence, Plaintiff discontinued his attempts to organize the painters. (Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts and Additional Facts ("PSUMF"), ¶29 (Doc. No. 32)).[1] Plaintiff filed union charges against Kenny "for failing to attempt to organize the City employees." (Complaint, ¶4). In turn, Kenny filed charges against Plaintiff for "disrupting the union." Id. On March 11, 2006, Plaintiff received a copy of the "specific charges" against him and notice that an "impartial trial committee will hear evidence in this case" on April 13, 2006. (DSUMF, Exhibit B, p. 4). As part of his statement against Plaintiff, Kevin Kenny alleged that, "Mr. Holschen was dismissed due to lack of performance as Organizer." (DSUMF, Exhibit B, p. 5). Also, Kenny stated that "[o]ver the past three years Mr. Holschen has sent pictures, correspondence and cards to neighboring District Councils, affiliated locals, Organizers, Business Representatives, International Vice Presidents and office staff; [sic] which proves to [be] very disruptive to District Council #2 goals and ambitions. (Refer to Trade Rules 14.7 and 14.8)." Id.[2]

---

[1] Defendant has not provided any specific objections to Plaintiff's additional facts. See Defendant's Response to Plaintiffs' [sic] Additional Facts. (Doc. No. 34-2). Consequently, those facts are deemed admitted. L.R. 4.01(E); Schmidt v. City of Bella Vista, No. 4:06cv265, 2007 U.S. Dist. LEXIS 97488, *11, n. 3 (E.D. Mo. 2007) (where plaintiff did not voice any denials or objections, the material facts set forth were deemed admitted for summary judgment purposes).

[2] Trade Rules 14.7 and 14.8 provide as follows:

14.7 Every member by virtue of his or her membership in a local union affiliated with District Council #2 is obligated to adhere to and follow the terms of these Bylaws, the Bylaws of his or her local union and the provisions of the General Constitution with respect to his or her rights, duties privileges and immunities conferred by them and by statue [sic]. Each member shall faithfully carry out such duties and obligations and shall not interfere with the rights of other members.

14.8 No member shall interfere with the elected officers of Business Representatives of this organization in the performance of their duties and each member shall when requested, render such assistance and support in the performance of such duties as may be required of them, provided this does not interfere with the individual's rights as members. Each member shall adhere to the terms and conditions of pertinent collective bargaining agreements and shall refrain from conduct that would

On April 13, 2006, the Union held trials regarding the charges brought by Plaintiff and Kenny against each other. Plaintiff was notified of the date, time and location of the trials by certified letter from the Union's District Council. (DSUMF, ¶ 3). At the trials, Plaintiff objected to Rich Dueckner being a member of the Trial Board because Dueckner worked "directly for" Kenny. (DSUMF, ¶¶ 5-6; PSUMF, ¶34). Over Plaintiff's objection, Dueckner participated in the Trial Board. Id. Plaintiff put on his evidence before the Trial Board but Plaintiff was cut off after only half of his presentation. (PSUMF, ¶37). Dueckner then escorted Plaintiff to a soundproof room while the remainder of the trials continued. (DSUMF, ¶¶ 11-13; PSUMF, ¶35). Plaintiff alleges that he was not given the opportunity to be present for the entire proceedings, cross-examine witnesses, or rebut Kenny's evidence against him. (Complaint, ¶5; PSUMF, ¶¶ 35-39).

On or around April 17, 2006, the Trial Board ordered that Plaintiff be expelled from the Union and fined $15,000. (Complaint, ¶6; DSUMF, ¶16; PSUMF, ¶41). No member of the Union had ever been expelled before, other than for non-payment of dues. (PSUMF, ¶40). Plaintiff was informed that he was not permitted to appeal the decision to expel him from the Union until he paid the $15,000 fine. (PSUMF, ¶41). The April 17, 2006 letter from the Union specifically stated "[i]f you appeal your case, it will nevertheless be necessary for you to pay this fine before your appeal is made." (PSUMF, ¶42). Plaintiff did not pay the $15,000 fine. (DSUMF, ¶¶ 17-18). Plaintiff did not appeal the Trial Board decision because the April 17, 2006 letter stated that he had to pay the fine prior to his appeal. (DSUMF, ¶19; PSUMF, ¶42).

---

interfere with the performance by the District Council of its legal contractual obligations. (DSUMF, Exhibit B, p. 10).

On November 12, 2007, Plaintiff filed a First Amended Complaint[3] alleging violations of the Labor-Management Reporting and Disclosure Act ("LMRDA")[4] (Count I).[5] (Doc No. 9). As stated above, the Union filed the instant Motion for Summary Judgment on August 11, 2008. (Doc. No. 28). In its Motion, the Union seeks summary judgment on Count I of the Complaint for violations of LMRDA.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at

---

[3]Plaintiff's original complaint (Doc. No. 1) alleged a claim for discrimination under Title VII and was dismissed on October 30, 2007 (Doc. No. 8).

[4]Also referred to as the "Landrum-Griffin Act."

[5] Count II of Plaintiff's Complaint purported to allege a state law tort claim for intentional interference with business expectancy and was dismissed for lack of jurisdiction on January 14, 2008. (Doc. No. 20).

248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## DISCUSSION

### I. Exhaustion of the Internal Union Remedies.

"The LMRDA permits a union to institute reasonable exhaustion requirements." Aleem v. International Union of Am. Fed'n of State, County & Mun. Employees, No. 94-1995, 1995 U.S. App. LEXIS 8482, *4 (6th Cir. Apr. 7, 1995). Section 101(a) (4) provides that a union member bringing a suit for vindication of rights under the LMRDA may be required to exhaust reasonable hearing procedures within the organization. 29 U.S.C. § 411(a)(4). The exhaustion provision "was designed to further LMRDA's purpose of achieving union democracy by giving unions a reasonable opportunity to correct abuses and by encouraging them to set up machinery for the prompt and fair disposition and review of disputes." Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012, 1016 (4th Cir. 1965); see also Runyan v. United Brotherhood of Carpenters, 566 F. Supp. 600, 606 (D. Colo. 1983) ("The exhaustion remedy requirement is premised on the purpose of giving the labor organization first opportunity to correct abuses and resolve disputes before resort to outside remedies.") (citing NLRB v. Industrial Union of Marine & Shipbuilding Workers of America, AFL-CIO, Local 22, 391 U.S. 418 (1968)).

The LMRDA, however, "does not make the exhaustion of hearing procedures mandatory in all cases, but allows the courts in their discretion to determine whether pursuit of such remedies is

required." Simmons, 350 F.2d at 1016 (citing Detroy v. American Guild of Variety Artists, 286 F.2d 75, 78-79 (2d Cir. 1961)); Stevens v. Northwest Ind. Dist. Council, United Bhd. of Carpenters, 20 F.3d 720, 731, n. 28 (7th Cir. 1994) (court has discretion regarding whether to excuse a failure to exhaust before bringing an LMRDA suit); Foy v. Norfolk & W. R. Co., 377 F.2d 243, 246 (4th Cir. 1967). "Exhaustion has not been demanded when plaintiffs will suffer irreparable harm in the exercise of their LMRDA rights." Amalgamated Clothing Workers Rank & File Comm. v. Amalgamated Clothing Workers, Philadelphia Joint Bd., 473 F.2d 1303, 1308 (3d Cir. 1973). Furthermore, "in situations where fundamental rights are at issue, courts are more inclined to exercise their discretion and allow cases to proceed even though the claimant has not exhausted intra-union procedures." Darnall v. Dalluge, No. 08-2057, 2008 U.S. Dist. LEXIS 57480, *15 (C.D. Ill. July 23, 2008).

Here, Plaintiff was fined fifteen thousand dollars ($15,000.00), and was informed by the Union that he could not pursue any appeal until he paid that fine. (PSUMF, ¶¶41-43). Both parties admit that Plaintiff did not pursue an appeal because Plaintiff could not pay the fine. (DSUMF, ¶19; PSUMF, ¶42). Plaintiff has also put forth evidence that the Union has never expelled a member for any reason other than failure to pay dues. (PSUMF, ¶40). Given the large fine imposed and the Union's requirement that Plaintiff pay the fine before exercising his appeal rights, this Court exercises its discretion and excuses Plaintiff from the exhaustion requirement, particularly because Plaintiff has alleged violations of certain fundamental rights, including free speech. See Keeffe Bros. v. Teamsters Local Union, 562 F.2d 298, 302 (4th Cir. Va. 1977) ("a free speech violation generally justifies dispensing with administrative remedies"); Darnall, 2008 U.S. Dist. LEXIS 57480 at *15.

Thus, this Court will not grant Defendant's Motion for Summary Judgment based upon Plaintiff's failure to exhaust the internal union appeal procedures. Consequently, the Court will address Defendant's arguments that Plaintiff's claims also fail on their merits.

## II. Merits

### A. Section 101(a)(1)

To be viable, a claim under § 101(a)(1) must allege the denial of some privilege or right to vote which the union has granted to others. Sim v. New York Mailers' Union No. 6, 166 F.3d 465, 471 (2d Cir. 1999) (citing Members for a Better Union v. Bevona, 152 F.3d 58, 65 (2d Cir. 1998)). The United States Supreme Court has explained that the provisions of 101(a)(1) are narrow in scope. Section 101(a)(1) "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." Calhoon v. Harvey, 379 U.S. 134, 139 (1964). "A cause of action by a union member cannot be sustained under 101(a)(1) without some claim of discrimination and some demonstration that the plaintiff has been denied the right to nominate or vote." Conery v. Niccollai, 34 Fed. Appx. 839, 842 (3d Cir. 2002); Smegal v. Gateway Foods of Minneapolis, Inc., 763 F.2d 354, 360 (8th Cir. 1985) (Section 101(a) (1) "grants every union member a right to vote on agreements if granted under the organization's constitution and bylaws. A denial of the right to vote, when it is required by the union's constitution, is a violation of § 101(a) (1).").

Section 101(a)(1) of LMRDA states:

(a) (1) Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

In his Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Memorandum in Opposition"), Plaintiff argues that his claim should survive summary judgment because "Holschen asserts" that he is being penalized for voting for a "dissident candidate." (Memorandum in Opposition, p. 8 (citing United Auto Workers Local 594 v. Int'l Union, 956 F.2d

1330 (6th Cir. 1992)) (Doc. No. 31).[6] Plaintiff's First Amended Complaint likewise does not provide any facts to support a Section 101(a)(1) violation.

As succinctly stated by Defendant, this is "not a voting rights case." (Defendant's Memorandum in Support of Summary Judgment, p. 7 (Doc. No. 29)). Plaintiff has failed to provide any evidence that the votes were discriminatory or that he (or other members) were otherwise excluded from the voting. See Marshall v. Local Union No. 6, Brewers & Maltsters & General Labor Dep't, 960 F.2d 1360, 1370 (8th Cir. 1992) ("it is apparent from the record that there was no discrimination on this vote, as no yeast workers were excluded from voting, nor does the record demonstrate that any member of the class was deprived of his or her right to cast a meaningful vote"). Plaintiff's unsupported allegations that he was somehow penalized for voting for a dissident candidate are insufficient to withstand Defendant's Motion for Summary Judgment with respect to his claim under § 101(a)(1) because there is no evidence that he was denied the privilege or right to vote which was afforded to others.

### B.     Section 101(a)(2)

"Section 101(a)(2) was intended to guarantee union members the right to express their views and opinions regarding union elections and officers." Conery, 34 Fed. Appx. at 842. Section 101(a)(2) of LMRDA provides:

---

[6]The only support for this allegation comes from Exhibit 4 to Defendant's Statement of Uncontroverted Material Facts (Doc. No. 29-4). In an April 12, 2006 letter from Kevin Kenny's opponent in the 2003 election, Richard Bryan, Bryan asserts that "[t]here's no doubt that [Holschen] was terminated from the position [of organizer] because of lack of loyalty to the new business manager, rather than lack of performance." (Doc. No. 29-4, p. 14). Even if Plaintiff were terminated because of "lack of loyalty," that reason is insufficient to state a claim of violation of his equal rights under Section 101(a)(1).

> (2) Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2).

Although "the speech and assembly protections of § 101(a)(2) are not coextensive with that of the First Amendment," courts find it helpful to turn to First Amendment jurisprudence for guidance in discerning the scope of the LMRDA's free speech guaranty. Newell v. State of Wis. Teamsters Joint Council No. 39, No. 05-C-552, 2008 U.S. Dist. LEXIS 13366, *17 (E.D. Wis. Feb. 21, 2008) (citations omitted). In the First Amendment context, the threshold question is whether the employee's speech may be "'fairly characterized as constituting speech on a matter of public concern.'" Hylla v. Transp. Communs. Int'l Union, No. 07-3573, 2008 U.S. App. LEXIS 16578, *12-13 (8th Cir. Aug. 6, 2008) (citing Wingate v. Gage County Sch. Dist., No 34, 528 F.3d 1074, 1081 (8th Cir. 2008)). Similar criteria must be applied in the LMRDA context. Id. The protection of Section 101(a)(2) is "limited to speech that relates to the general interests of the union membership at large." Hylla, 2008 U.S. App. LEXIS 16578, at *15; see also Bradford v. Textile Workers of America, 563 F.2d 1138, 1142 (4th Cir. 1977) ("one of the specifically protected rights under the Act is that of free-speech which encompasses ... 'intra-union political activity'"). Nevertheless, as the Eighth Circuit has observed, the rights under § 101(a)(2) are subject to reasonable union rules that may restrict such rights, and thus, § 101(a)(2) is not strictly

parallel with the First Amendment even though § 101(a)(2) was patterned after it. Hylla, 2008 U.S. App. LEXIS 16578, at *12 (citations omitted).

In his Memorandum in Opposition to Summary Judgment, Plaintiff argues that he was "prevented from 'expressing any views, arguments or opinions.'" (Memorandum in Opposition, p. 8 (no internal citation provided)). Although it is not entirely clear from the record, Plaintiff appears to be arguing that his free speech rights were adversely impacted when he was demoted from his position as an organizer allegedly for supporting Rich Bryan instead of Kevin Kenny in 2003, and when his membership in the Union was terminated in 2006 allegedly in retaliation for Plaintiff's attempts to organize painters employed by the City of St. Louis. (First Amended Complaint, ¶¶ 2-6). Plaintiff's speech supporting a particular candidate and organizing workers relates to the union membership at large and, thus, is protected under Section 101(a)(2). See Hylla, 2008 U.S. App. LEXIS 16578, at *15.

Defendant has failed to carry its burden to demonstrate that Plaintiff's demotion and termination were not the result of his exercise of his free speech on union matters. Defendant has not provided any basis for Plaintiff's demotion, and eventual discharge from the Union, other than Kevin Kenny's laconic statement that Plaintiff "was dismissed [in 2003 from his position as Organizer] due to his lack of performance." (DSUMF, Exhibit B, p. 5); cf. Hylla, 2008 U.S. App. LEXIS 16578, at *23 (holding that plaintiff was removed because of his enumerated acts of "individualized insubordination"). With respect to the expulsion of Plaintiff from the Union in 2006, Kevin Kenny testified that he believed that Plaintiff was dismissed from the Union because he was organizing workers in the City of St. Louis after he was directed by a February 8, 2006 letter from Kenny to stop his organizing efforts. (PSUMF, ¶ 28). Kenny, however, also testified that he does not have any reason to believe that Plaintiff continued his organizing efforts after

February 8, 2006. (PSUMF, ¶ 29). Thus, an issue of fact exists as to the basis for Plaintiff's expulsion from the Union and whether Plaintiff's demotion were violations of Section 101(a)(2). Gabauer v. Woodcock, 520 F.2d 1084, 1091-93 (8th Cir. 1975) ("Such reprisals would be a violation of the freedom of speech rights guaranteed union members in Title I, § 101(a)(2) of the Landrum-Griffin Act, 29 U.S.C. § 411(a)(2).").

Furthermore, Plaintiff has also set forth evidence that "[i]t was generally known that Holschen planned to run against Kenny in the general election." (PSUMF, ¶ 25). After Plaintiff was expelled from the Union, Kenny ran unopposed in the election for Business Manager. (PSUMF, ¶ 45). Plaintiff has provided a reasonable inference, which was not addressed or rebutted by Defendant, that Plaintiff may have been terminated from the Union to quell his speech as an opposing candidate to Kenny. Conery, 34 Fed. Appx. at 842-43 (citing Finnegan v. Leu, 456 U.S. 431, 441 (1982)) (The infringement on free speech must be viewed with reference to the basic objective the LMRDA: "'to ensure that unions [are] democratically governed, and responsive to the will of the union membership as expressed in open periodic elections.'").

Thus, Defendant has failed to put forth evidence in its uncontroverted material facts that Plaintiff has no claim under Section 101(a)(2). Defendant, who bears the burden to demonstrate no issues of material fact exist, has failed to demonstrate that Plaintiff was not terminated as Organizer and expelled from the Union based upon his exercise of free speech. Defendant's Motion for Summary Judgment is denied with respect to this claim.

**C.     Section 101(a)(5)**

Section 101(a)(5) applies to sanctions imposed by a labor organization that affect the status of the disciplined party as a union member. Goodman v. Laborers' International Union, 742 F.2d 780, 782 (3d Cir. 1984). Section 101(a)(5) of the LMRDA guarantees all members of labor organizations "a full and fair hearing" before they can be disciplined (except for nonpayment of dues). Knight v. Int'l Longshoremen's Ass'n, 457 F.3d 331, 340 (3d Cir. 2006).[7] To determine whether there has been a full and fair hearing, courts look to whether the hearing afforded "is inconsistent with traditional concepts of due process." Id. "Union disciplinary proceedings ... are comparable in several important respects to a criminal trial, where credibility is crucial and secrecy is utterly foreign to our concepts of fairness." Rosario v. Amalgamated Ladies' Garment Cutters' Union, Local 10, 605 F.2d 1228, 1242 (2d Cir. 1979).

Plaintiff admits that the "crux" of his arguments is a violation of (a)(5)(C), including a "procedural failure, and a failure to provide an impartial tribunal." (Memorandum in Opposition, p. 9 (unnumbered)). Plaintiff argues that he did not receive a full and fair hearing because he did not have an impartial tribunal and because he was not allowed to participate in the trial against him. For the reasons stated herein, this Court believes that the uncontroverted facts do not support a claim that the Trial Board was biased against Plaintiff. The Court, however, finds that Plaintiff did not receive a full and fair hearing because he was not allowed to cross-examine witnesses or respond to the evidence against him.

---

[7]Section 101(a)(5) provides "[s]afeguards against improper disciplinary action. No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

1. **Impartial Tribunal**

The common law requires that a valid expulsion of a member can only occur after a "fair hearing." The elements of such a "fair hearing" often resemble constitutional due process requirements and generally encompass full notice and a reasonable opportunity to be heard, including the right to present evidence and the right to confront and cross-examine witnesses. Falcone v. Dantinne, 420 F.2d 1157, 1165 (3d Cir. 1969) (citing Parks v. Int'l Brotherhood of Electrical Workers, 313 F.2d 886, 902 (4th Cir.), cert denied 372 U.S. 976 (1963).

Here, Plaintiff has alleged that he objected to Richard Dueckner being a part of the Trial Board. (DSUMF, ¶¶ 5-6; PSUMF, ¶34). Plaintiff objected to Dueckner participating in the Trial Board because Dueckner "work[ed] directly for" Kenny and Plaintiff believed Dueckner's participation was a conflict of interest. In addition, Kevin Kenny appointed all of the members of the Trial Board. (PSUMF, ¶ 30).

Political allegiances, however, "are not, alone, sufficient to establish a lack of impartiality in a tribunal. To establish such a lack it is necessary to establish, directly or inferentially, that one of the members of the tribunal had prejudged the matter at hand." Biggerstaff v. Davis, No. H-79-133, 1984 U.S. Dist. LEXIS 18202, *16-17 (N.D. Ind. Mar. 27, 1984). "[A] mere assertion of divergent political sympathies is an insufficient premise upon which to establish a lack of impartiality in a disciplinary tribunal under 29 U.S.C. § 411(a)." Id.; cf. Goodman v. Laborers' Int'l Union, 742 F.2d 780, 784 (3d Cir. 1984) (citing Falcone, 420 F.2d at 1163) ("The prejudgment by a single decisionmaker in a tribunal of limited size is sufficient to taint the proceedings and constitute a denial of the right to a full and fair hearing under the LMRDA."). Although the better practice would have been to exclude union members outside of the chain of command of Plaintiff's accuser from membership on the Trial Board, the Court does not find any

evidence that Dueckner or any other Trial Board member "prejudged" Plaintiff or otherwise did not consider the evidence presented. Plaintiff has neither shown that any Trial Board member had any bias towards Plaintiff or that any member tainted the process because of his purportedly biased views.

### 2. Due Process Violation/Refusal to Allow Plaintiff to Participate

Plaintiff further argues that Defendant violated Section 101(a)(5) because he was not afforded a full and fair hearing. Specifically, after Plaintiff presented his evidence for approximately a half an hour, Plaintiff was escorted from the Trial Board meeting and did not otherwise participate in the hearing. Plaintiff alleges that, at the end of the presentation of his case, Dueckner stated "come with me" and escorted Plaintiff to a "soundproof room." Plaintiff was not permitted to cross-examine any of the witnesses put on by Kenny or examine and rebut any of the evidence presented against him. (See Affidavit of Stephen Holschen, ¶¶ 2-3 (Doc. No. 32-4); PSUMF, ¶¶ 35-39).

Defendant has not explained why Plaintiff was escorted from the hearing to a separate room while testimony and presentation of evidence continued. Rather, Defendant argues that Plaintiff did not ask to stay in the room and it was Plaintiff's obligation to make this request. (Memorandum in Support of Summary Judgment, p. 10-11 (Doc. No. 29); DSUMF, ¶¶ 10-14). This Court finds that Defendant was not afforded an adequate opportunity to participate in the trials. Plaintiff may have felt compelled to relinquish his right to cross-examine witnesses and examine evidence in violation of his due process rights when Dueckner, a member of the Trial Board, requested that Plaintiff "come with" him. Cf. Ritz v. O'Donnell, 413 F. Supp. 1365, 1373 (D.D.C. 1976) (plaintiffs' complaint that they were not afforded the opportunity to cross-examine their accusers was untimely where defendants offered several times to produce for cross-

examination any witnesses requested by plaintiffs and each time, however, the accused parties either expressly or silently decided not to specifically request witnesses, even though they stated awareness of their right to do so).

Furthermore, the Court cannot determine whether Plaintiff was afforded his due process rights due to the dearth of information provided regarding the basis for Kenny's charges against Plaintiff (and for which he was convicted). The apparent basis of the charges against Holschen was that he was organizing workers in the City of St. Louis after he was directed by a February 8th letter from Kevin Kenny to stop his organizing efforts. (PSUMF, ¶ 28). The Court has no evidence before it that Plaintiff continued to attempt to organize the City workers after February 8, 2006. (PSUMF, ¶ 29). The Court has not received a copy of the transcript (if there was one) of the proceedings. The Trial Board Verdict merely states "Guilty. $15,000 fine with nothing held in abeyance & expulsion." (DSUMF, Exhibit B, p. 1). Defendant has not provided any evidence or uncontroverted facts to support the verdict.

Finally, as further evidence of Defendant's weak position on this claim, Defendant relies on its exhaustion argument as the primary basis for judgment on this claim. See Reply, p. 6 (Doc. No. 34) ("Plaintiff was duty-bound to determine what provisions of the Constitution he allegedly violated and to take action to protect himself by appealing the decision of the trial board."). As discussed above, the Court refuses to require exhaustion of Plaintiff's remedies given that he was required to pay the $15,000 fine prior to commencing an appeal.

Therefore, the Court believes that Defendant has failed to provide uncontroverted evidence to support its claim that it should be granted summary judgment on the Section 101(a)(5) claim. Defendant has not demonstrated that Plaintiff was afforded a full and fair hearing and Plaintiff has provided sufficient evidence that he was not permitted to cross-examine

witnesses or to rebut Defendant's evidence against him. Defendant's Motion for Summary Judgment on Plaintiff's Section 101(a)(5) claim is denied.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Painters District Council #2's Motion for Summary Judgment (Doc. No. 28) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's Section 101(a)(1) claim under Count I of Plaintiff's First Amended Complaint (Doc. No. 9).

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's Sections 101(a)(2) and (5) claims under Count I of Plaintiff's First Amended Complaint (Doc. No. 9).

Dated this 18th day of September, 2008.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE